UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X
GARDEN CITY BOXING CLUB, INC.,
As Broadcast Licensee of the
September 18, 2004 DeLaHoya/Hopkins
Program                                    REPORT AND
                                           RECOMMENDATION
                        Plaintiff,
                                           CV 2005-1047 (DGT)(MDG)

            - against -

ROGELIA ROJAS, MAXIMO ROJAS,
Individually and as officers,
directors, shareholders and/or
principals of ROJAS DELI GROCERY INC.
d/b/a ROJAS DELI & GROCERY, and ROJAS
DELI GROCERY INC. d/b/a ROJAS DELI &
GROCERY,

                        Defendants.

- - - - - - - - - - - - - - - - - X


TO: THE HONORABLE DAVID G. TRAGER:

        Plaintiff Garden City Boxing Club, Inc. ("plaintiff")

brought this action under Title 47 of the United States Code

alleging that Rogelia Rojas and Maximo Rojas, Individually and as

officers, directors, shareholders and/or principals of Rojas Deli

Grocery Inc. d/b/a Rojas Deli & Grocery, and Rojas Deli Grocery

Inc. d/b/a Rojas Deli & Grocery ("Rojas Deli & Grocery")

(collectively referred to as "defendants") violated sections 553

and 605 by intercepting and displaying to their customers,

without plaintiff's authorization, a boxing match held on

September 18, 2004.  Complaint ("Compl.") (ct. doc. 1) at ¶¶ 1,

13, 16, 17.

After entry of default following defendants' failure to appear or otherwise defend in this action, (ct. doc. 7), the plaintiff's motion for default judgment was referred to me for a report and recommendation on damages and attorneys' fees.

## PERTINENT FACTS

The facts pertinent to determination of this motion are undisputed and are set forth in the complaint; the August 9, 2005 affidavit of Joseph Gagliardi, President of plaintiff ("Gagliardi Aff.") attached as attachment 1 to the Motion for Default Judgment ("the Motion") (ct. doc. 10); the August 25, 2005 affidavit of Julie Cohen Lonstein, Esq., counsel for plaintiff ("Lonstein Aff.") attached as attachment 2 to the Motion; the October 19, 2004 affidavit of investigator Dominic Nugnes ("Nugnes Aff.") attached as Exhibit B to the Lonstein Aff.[1] at 8-11; and Plaintiff's Inquest Memorandum ("Pl. Mem.") dated October 25, 2005 (ct. doc. 12). Defendants did not file any opposing papers.

Plaintiff is a corporation organized and existing under the laws of the State of California, with its principal place of business located in Campbell, California. Compl. at ¶ 5.

---

[1] Although Mr. Gagliardi states that he has also attached the affidavit of investigator Nugnes as Exhibit C to his affidavit, Exhibit C is an affidavit of Carl Thomas in connection with an investigation of a different boxing match three months later. See Gagliardi Aff. at 38-39.

Defendant Rojas Deli Grocery Inc. is alleged to be a New York corporation and/or partnership with its principal place of business located at 443 Bushwick Avenue, Brooklyn, New York. Id. at ¶¶ 8-10. Defendants Rogelia Rojas and Maximo Rojas reside in the State of New York. Id. at ¶¶ 6-7.

Plaintiff owns the rights to broadcast via closed-circuit television and satellite the championship boxing match between Oscar De La Hoya and Bernard Hopkins and all undercard bouts held on September 18, 2004 (the "boxing match"). Id. at ¶ 13; Gagliardi Aff. at ¶ 3, Exh. A. Plaintiff, in turn, entered into sublicense agreements with commercial establishments to show the boxing match, which was originated by satellite uplink and was retransmitted via cable transmission and encrypted satellite signal. Compl. at ¶¶ 13, 15; Gagliardi Aff. at ¶ 4. In order to receive and display the broadcast clearly, a viewer would need to use electronic decoding equipment or a satellite authorization code. Gagliardi Aff. at ¶ 11.

Defendants did not contract with plaintiff and thus were not authorized to receive and publish the boxing match. Id. at ¶ 7. As set forth in his affidavit, investigator Dominic Nugnes observed the unauthorized public showing by Rojas Deli & Grocery of the boxing match to 8 customers. Nugnes Aff. at 2. Entering the establishment at approximately 12:08 a.m. on Sunday, September 19, 2004, investigator Nugnes observed, inter alia, the seventh round of the boxing match. Id. at 1.

Plaintiff served the corporate defendant Rojas Deli Grocery Inc. on March 18, 2005, by personally serving an officer of the corporation, defendant Rogelia Rojas, in accordance with Fed. R. Civ. P. 4(h)(1). Ct. doc. 5. On the same date, plaintiff also served the individual defendants Rogelia Rojas and Maximo Rojas personally. Ct. docs. 3 and 4. Since the Federal Rules of Civil Procedure permit personal service upon corporations by service upon an officer and personal service upon individuals, I find that service was properly effectuated upon all defendants. See Fed. R. Civ. P. 4(e)(2), 4(h)(1).

Following defendants' failure to answer the complaint, plaintiff filed a motion for judgment by default on September 6, 2005. Ct. doc. 10.

DISCUSSION

I.  Legal Standards Governing Default

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except for those relating to damages. Greyhound Exhibitgroup, Inc. v. E.L.U.L. Reality Corp., 973 F.2d 155, 158 (2d Cir.), cert. denied., 506 U.S. 1080 (1993); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). A default also effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct; that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged. Greyhound, 973 F.2d at 159. The movant need prove "only that the

compensation sought relate to the damages that naturally flow from the injuries pleaded." Id.

The court must ensure that there is a reasonable basis for the damages specified in a default judgment. Actual damages or statutory damages may be assessed. In determining damages not susceptible to simple mathematical calculation, Fed. R. Civ. P. 55(b)(2) gives a court the discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir.), cert. denied, 503 U.S. 1006 (1992) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)). The moving party is entitled to all reasonable inferences from the evidence it offers. Au Bon Pain, 653 F.2d at 65 (citing Trans World Airlines, Inc. v. Hughes, 308 F. Supp. 679, 683 (S.D.N.Y. 1969)).

II. Determination of Damages

A. Liability

Both sections 553 and 605 of Title 47 prohibit the unauthorized reception of cable programming. Section 553(a)(1) specifically applies only to cable transmissions and provides that, "[n]o person shall intercept or receive ... or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." Section 605(a) generally provides that, "[n]o person not

being authorized by the sender shall intercept any radio communication ... or assist in receiving any interstate or foreign communication by radio and use such communication for his own benefit or the benefit of another not entitled thereto."

The Second Circuit in Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 130 (2nd Cir.), cert. denied sub nom Noel v. Int'l Cablevision, Inc., 519 U.S. 929 (1996)("Sykes II"), held that section 605 applies to "the interception of cable-borne, as well as over-the-air, pay television" where cable-borne transmissions originate as satellite transmissions. See also, Cmty. Television Sys., Inc. v. Caruso, 284 F.3d 430, 435 (2d Cir. 2002). When certain television programming is transmitted or intercepted over both cable and satellite mediums, both sections 553 and 605 apply. Id.

Plaintiff's submissions establish that defendants violated sections 553 and 605 of Title 47 by intercepting and receiving the boxing match without authorization. Compl. at ¶¶ 16-17; Nugnes Aff. at 1-2. Plaintiff had the right to distribute the boxing match, which originated via satellite uplink. Compl. at ¶¶ 14-15; Gagliardi Aff. at ¶¶ 3-4, Exh. A. Investigator Nugnes observed at Rojas Deli & Grocery, a business operated by Rogelia Rojas and Maximo Rojas, the boxing match being displayed to customers, even though defendants had not contracted with plaintiff to do so. Nugnes Aff. at 1-2.

Consequently, this Court finds that defendants' unlicensed reception and exhibition of the transmissions violated sections 553 and 605 of Title 47.

B. Damages

Plaintiff requests damages pursuant to section 605, rather than section 553. Pl. Mem. at 4-6. Where a defendant is liable under both sections 553 and 605, the plaintiff is entitled to have damages awarded under section 605 because it provides greater recovery than does section 553. See Sykes II, 75 F.3d at 127; Entm't by J & J, Inc. v. Mama Zee Rest. & Catering Servs., Inc., No. CV-01-3945, 2002 WL 2022522, at *3 (E.D.N.Y. May 21, 2002) (recovery under both sections 553 and 605 is impermissible).

Section 605 allows plaintiff to elect to recover either actual damages and lost profits, or statutory damages. See 47 U.S.C. § 605(e)(3)(C)(i). Section 605(e)(3)(C)(i)(II) authorizes statutory damages of no less than $1,000 and no more than $10,000 for each violation of section 605(a). In addition, section 605(e)(3)(C)(ii) vests the court with the discretion to increase the award of damages where "the court finds that the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain." The court is authorized to award enhanced damages of up to $100,000 for each violation of willfulness. Section 605(e)(3)(C)(i)(II)

vests the court with the discretion to determine the amount of statutory damages, authorizing the court to award an amount "as the court considers just." See Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. 480, 484 (D. Conn. 1993); see also Joe Hand Promotions, Inc. v. Nekos, 18 F. Supp. 2d 214, 217 (N.D.N.Y. 1998) (the court has "discretion to adjust the amount awarded to the plaintiff").

In exercising such discretion, courts should be mindful of the difficulty in detecting such violations and the widespread problem of piracy. See Cablevision Sys. New York City Corp. v. Faschitti, No. 94 Civ. 6830 (DC), 1996 WL 48689, at *2 (S.D.N.Y. Feb. 7, 1996); see also Sykes II, 75 F.3d at 132 (quoting legislative history). The court should therefore grant damages in an amount which achieves the deterrent purposes of the statute. See Cablevision Sys. New York City Corp. v. Lokshin, 980 F. Supp. 107, 113 (E.D.N.Y. 1997).

Plaintiff seeks to recover statutory damages in the amount of $2,200 and enhanced damages of at least $11,000 for defendants' willful violation of section 605. Pl. Mem. at 8. Some courts, when presented with sufficient evidence indicating the number of patrons present at the time of the unauthorized programming, have employed a formula that multiplies that number by a dollar amount, usually based on the customary charge for the event in question. See, e.g., Mama Zee, 2002 WL 2022522, at *10 (awarding $50 per patron); Time Warner Cable of New York City v.

-8-

Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999) (same); Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. 107, 111 (E.D.N.Y. 1997) (same).  Other courts have simply assessed a flat damages amount per violation. See Joe Hand Promotions, Inc. v. Hernandez, No. 03 Civ. 6132, 2004 U.S. Dist. LEXIS 12159 (S.D.N.Y. June 30, 2004) (awarding $1,000 statutory damages and $1,500 enhanced damages for one-time exhibits of boxing match to about 20 customers); Garden City Boxing Club, Inc. v. Ayisah, 02 Civ. 6673, 2004 U.S. Dist. LEXIS 7867 (S.D.N.Y. Apr. 28, 2004) (awarding $3,000 statutory damages and $5,000 enhanced damages for one-time exhibit of boxing match to 60 customers); Kingvision Pay-Per-View, Ltd. v. Jasper Grocery, 152 F. Supp. 2d 438 (S.D.N.Y. 2001) (awarding $5,000).

Recently, a number of judges in this district have awarded damages based on the number of patrons or the capacity of an establishment multiplied by the residential fee for a pay-per-view broadcast.  See, e.g., Garden City Boxing Club, Inc. v. Rosado, No. CV 05-1037, 2005 WL 3018704, at *3 (E.D.N.Y. Oct. 6, 2005) (recommending statutory damage award of $989.10 based on $54.95 for each of the 19 patrons observed in the establishment); Garden City Boxing Club, Inc. v. Bello, No. CV-05-1300, 2005 WL 2496062, at *3 (E.D.N.Y. Sept. 20, 2005) (recommending statutory damages based on same $54.95 residential rate for each of the 40 patrons who could have viewed the prize fight based on the establishment's capacity).  Courts using the residential fee

reason that this is the amount each patron would have paid to view the boxing match from home had he or she not had access to a broadcast at the establishment at issue. See Bello, 2005 WL 2496062, at *3. Plaintiff states that the "purchase of a pay-per-view broadcast for the event at the residential price" would cost $54.95. Gagliardi Aff. at ¶ 11(B).

Plaintiff has submitted evidence that 8 customers were present at Rojas Deli & Grocery when investigator Nugnes observed the match being illegally displayed during the seventh round of the title match. Nugnes Aff. at 2. Investigator Nugnes described the layout of the establishment as "deli style with counter and stools on the right" and estimated that this establishment could accommodate approximately 25 people. Nugnes Aff. at 1, 2. The photographs of the exterior of the premises do not reveal that advertisements concerning the match were posted nor did the investigator have to pay a cover charge before entering. Id. at 1, 3-4. Since the concern appears to be nothing more than a convenience store lacking seating for total potential customers, I recommend that damages be based on the number of customers in defendants' establishment, rather than total capacity. Accordingly, the amount of damages for 8 customers would be $439.60. Since the amount is less than the statutory minimum, I recommend that the damages award against defendants be $1,000.

Further, I recommend that the Court award enhanced damages against defendants. Defendants who intercept signals and broadcast programming without authorization "in a place of business where certain events are shown to the public" are generally held to have acted willfully and for purposes of commercial advantage. <u>Am. Cablevision of Queens v. McGinn</u>, 817 F. Supp. 317, 320 (E.D.N.Y. 1993) (citing <u>Cablevision Sys. Corp. v. Maxie's North Shore Deli Corp.</u>, No. 88 CV 2834, 1991 WL 58350 (E.D.N.Y. Mar. 20, 1991)). Courts consider a variety of factors to determine whether a defendant's willful conduct warrants enhanced damages. These factors include: "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; [and] defendant's charging a cover charge or charging premiums for food and drinks." <u>Kingvision Pay-Per-View, Ltd. v. Recio</u>, No. 02 Civ. 6583, 2003 WL 21383826, at *5 (S.D.N.Y. June 11, 2003) (internal citations omitted).

The undisputed facts presented by plaintiff in its complaint and the supporting affidavits clearly establish that Rojas Deli & Grocery is a commercial establishment that publicly displayed the De La Hoya/Hopkins boxing match to customers without authorization. Compl. ¶¶ 16-17; Nugnes Aff. at 1-2. Plaintiff's submissions support the inference that on September 18, 2004, Rojas Deli & Grocery displayed the match for commercial gain in

-11-

order to attract customers or retain customers who would purchase defendants' products.  Significantly, defendants have subsequently been sued for theft of cable programming in two other actions.  See Joe Hand Promotions, Inc. v. Rojas et al., 05-cv-05085 (ENV)(MDG) filed on November 1, 2005 and Kingvision Pay-Per-View, Ltd. v. Rojas Deli Grocery Inc. et al., 06-cv-03042 (NGG)(VVP) filed on June 19, 2006.[2]  The second action involved claims arising from the allegedly unauthorized display of a different boxing match on May 14, 2005, two months after defendants were served with the complaint herein on March 18, 2005.  Defendants also defaulted in those actions.  Thus, I find that defendants willfully acted to intercept the match without authorization and recommend enhanced damages of $10,000 to deter future illegal conduct.

C.   Injunctive Relief

Plaintiff also seeks permanent injunctive relief against defendants pursuant to 47 U.S.C. § 605(e)(B)(i).  Gagliardi Aff. at wherefore clause; Pl. Mem. at 9-10.  However, Fed. R. Civ. P 54(c) provides that a judgment by default is limited to the relief demanded in the complaint.  See Fed. R. Civ. P. 54(c) ("judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment").

---

[2] This Court may take judicial notice of docket entries. See Schwartz v. Capital Liquidators, Inc., 984 F.2d 53, 54 (2d Cir. 1993); Mangiafico v. Blumenthal, 358 F. Supp. 2d 6, 9 (D. Conn. 2005).

The theory underlying this provision is that it would be unfair for the defendants to rely on the relief sought in the complaint in determining not to appear and then for the court to award a different kind of relief.  See 10 Wright, Miller & Kane, Federal Practice & Procedure § 2663 (3d ed. 1998); In re Crazy Eddie Sec. Litig., 948 F. Supp. 1154 (E.D.N.Y. 1996) (discussing importance of notice even under liberal pleading rules).  Here, since plaintiff's complaint does not demand injunctive relief, that type of relief cannot be awarded upon default.  See SEC v. Wencke, 577 F.2d 619, 623 (9th Cir. 1978); Pacific Westeel, Inc. v. D & R Installation, No. 01 Civ. 0293, 2003 WL 22359512, at *2-3 (S.D.N.Y. Oct. 17, 2003) (limiting monetary damages to amount requested in complaint); Kingvision Pay-Per-View, Ltd. v. Arias, NO. C 99-3017 (SI), 2000 WL 20973, at *2 n. 5 (N.D. Cal. Jan 07, 2000).

   D.   Attorneys' Fees

   Plaintiff seeks to recover its attorneys' fees and costs totaling $2,107.50.  Compl. at ¶¶ 22, 28, 34; Lonstein Aff. at ¶ 2.  Title 47 U.S.C. § 605(e)(3)(B)(iii) mandates that reasonable attorneys' fees and costs be awarded to a prevailing aggrieved party.  Int'l Cablevision, Inc. v. Sykes, 997 F.2d 998, 1009 (2d Cir. 1993) ("Sykes I").  The standard method for determining the amount of reasonable attorneys' fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," or the lodestar.  Hensley v. Eckerhart, 461 U.S.

-13-

424, 434, 103 S. Ct. 1933, 1940 (1983); <u>Chambless v. Masters,</u>
<u>Mates & Pilots Pension Plan</u>, 885 F.2d 1053, 1058-59 (2d Cir.
1989), <u>cert.</u> <u>denied</u>, 496 U.S. 905 (1990).

In reviewing a fee application, the district court must
examine the particular hours expended by counsel with a view to
the value of the work product of the specific expenditures to the
client's case.  <u>See</u> <u>Lunday v. City of Albany</u>, 42 F.3d 131, 133
(2d Cir. 1994); <u>DiFilippo v. Morizio</u>, 759 F.2d 231, 235 (2d Cir.
1985).  If any expenditure of time was unreasonable, the court
should exclude these hours from the lodestar calculation.  <u>See</u>
<u>Hensley</u>, 461 U.S. at 434; <u>Lunday</u>, 42 F.3d at 133.  The court
should thus exclude "excessive, redundant or otherwise
unnecessary hours, as well as hours dedicated to severable
unsuccessful claims."  <u>Quaratino v. Tiffany & Co.</u>, 166 F.3d 422,
425 (2d Cir. 1999).  A party seeking attorneys' fees bears the
burden of supporting its claim of hours expended by accurate,
detailed and contemporaneous time records.  <u>New York State Ass'n</u>
<u>for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1147-48 (2d
Cir. 1983).

The reasonable hourly rates should be based on "the
prevailing marketplace rates in the community for similar
services by a lawyer of reasonably comparable skill, experience,
and reputation."  <u>Cruz v. Local Union No. 3 of IBEW</u>, 34 F.3d
1148, 1159 (2d Cir. 1994).  Determination of the prevailing
market rates may be based on evidence presented or a judge's own

knowledge of hourly rates charged in the community.  <u>Chambless</u>,
885 F.2d at 1059.  The Court in <u>Rotella</u> found that "the prevalent
market rate in this district is in the range of $200 to $250 for
partners and between $100 and $200 for junior and senior
associates."  <u>Rotella v. Bd. of Educ. of City of New York</u>, No. 01
CIV. 0434, 2002 WL 59106, at *2-3 (E.D.N.Y. Jan. 17, 2002)
(citations omitted) (finding that rate of lead counsel in a small
firm of $225 per hour and rates of $135 and $100 per hour for
junior counsel were reasonable); <u>see also</u> <u>SEC v. Goren</u>, 272 F.
Supp. 2d 202, 207 (E.D.N.Y. 2003).

Plaintiff seeks to recover $1,237.50 in attorneys' fees.
Lonstein Aff. at ¶¶ 2-3.[3]  The amount of time spent by the
attorneys and paralegals on work relating to the defaulting
defendants and their billing rates are summarized below:

| Attorney/ Paralegal | Time | Rate | Amount |
|---|---|---|---|
| Atty | 5.25 | $200.00 | $1,050.00 |
| Para | 2.50 | $75.00 | $187.50 |

**Total Fees:        $1,237.50**

After reviewing plaintiff's submissions, I find that
plaintiff has provided sufficient information to explain the time

_____

[3] The paragraphs in Julie Cohen Lonstein's Attorney
Affidavit of Costs and Fees are incorrectly numbered.  References
to paragraph "2" in this report and recommendation are to the
second paragraph "2."

spent by its attorney staff and that the time spent on this case is reasonable in light of the work completed. Although the rate sought by plaintiff for attorney time <u>may</u> be reasonable, plaintiff fails to provide any information identifying the attorneys who worked on this matter and the experience of the attorneys. If the work is performed by an associate with only a few years of experience, then I would find the $200 per hour rate unreasonable based on my knowledge of prevailing rates for such matters in New York. <u>See</u> <u>Rotella</u>, 2002 WL 59106, at *2-3; <u>see generally</u>, <u>Googies Luncheonette, Inc.</u>, 77 F. Supp. 2d at 491.

Furthermore, this Court questions the accuracy of the amount of time claimed even though the amount claimed by plaintiff is not substantial. For example, plaintiff's counsel seeks compensation for 1.5 hours of work in drafting the complaint, an amount that plaintiff's counsel has claimed in a large number of cases brought for the theft of programming, as observed by a number of my colleagues. Between February 17, 2005 and March 9, 2005, plaintiff filed at least 26 actions in this district against various commercial establishments for unauthorized display of the De La Hoya/Hopkins match.[4] In half of those cases, the defendants defaulted and plaintiff's counsel sought in the fees application compensation for 1.5 hours for drafting the

_____

[4] <u>See</u> CV05-0938; CV05-0939; CV05-0940; CV05-0941; CV05-0943; CV05-0944; CV05-0945; CV05-0946; CV05-1035; CV05-1036; CV05-1037; CV05-1038; CV05-1039; CV05-1040; CV05-1041; CV05-1042; CV05-1043; CV05-1044; CV05-1045; CV05-1046; CV05-1047; CV05-1298; CV05-1299; CV05-1300; CV05-0899; CV05-0942; and CV05-1841.

complaint in all but one case.[5]  While this Court understands the

difficulty plaintiff may have in enforcing its licensing rights

against widespread theft of programming and its desire to do so

economically, the plaintiff has failed to meet its burden of

providing sufficiently detailed records.  <u>See</u> <u>New York State</u>

<u>Ass'n for Retarded Children, Inc.</u>, 711 F.2d at 1147-48.  Given

the uncertainty over the propriety of the rates claimed and

concern over the accuracy of time claimed, I recommend that

plaintiff's request for fees be reduced by 20% for attorney time

to $840, for a total fee award of $1,027.50, including paralegal

time.  <u>See</u> <u>Luciano v. Olsten Corp.</u>, 109 F.3d 111, 117 (2d Cir.

1997) (permitting courts to make an across-the-board reduction in

the amount of hours for unreasonable hours claims).

Pursuant to section 605(e)(3)(B)(iii), plaintiff also seeks

$870 in costs.  In support of that request, plaintiff has

submitted an affidavit from Julie Cohen Lonstein, attesting to

the payment of $350 to the investigator for his services.

Gagliardi Aff. at ¶ 10, Exh. D; Lonstein Aff. at ¶ 2.  In

addition, plaintiff seeks reimbursement for filing fees of $250

and service of process fees in the amount of $270, which I find

to be reasonable.  Lonstein Aff. at ¶ 2.

---

[5] <u>See</u> CV05-0943; CV05-0945; CV05-0946; CV05-1035; CV05-1037;
CV05-1040; CV05-1041; CV05-1043; CV05-1044; CV05-1046; CV05-1298;
CV05-1299; CV05-1300; <u>but</u> <u>see</u> CV05-1039 (one hour claimed).

This Court agrees that plaintiff may be entitled to recover costs incurred for the investigator since the investigation clearly was "incidental and necessary" to the prosecution of this case. See Amato v. City of Saratoga Springs, 991 F. Supp. 62, 68 (N.D.N.Y. 1998) (citing Northcross v. Bd. of Educ., 611 F.2d 624, 639 (6th Cir. 1979)); see also Rolex Watch U.S.A., Inc. v. Brown, No. 01 CIV. 9155 (JGK)(AJP), 2002 WL 1226863, at *4 (S.D.N.Y. June 5, 2002) (awarding investigative fees in trademark infringement action); Int'l Cablevision, Inc. v. Noel, 982 F. Supp. 904, 918 (W.D.N.Y. 1997) (acknowledging investigative fees recoverable as a cost under § 605); Video Aided Instruction, Inc. v. Y & S Express, Inc., No. 96 CV 518, 1996 WL 711513, at *6 (E.D.N.Y. Oct. 29, 1996) (awarding fees); Maywalt v. Parker & Parsley Petroleum Co., 864 F. Supp. 1422, 1439 (S.D.N.Y. 1994) (approving $75 rate for investigators as within "the reasonable range of rates" paid in the district). However, based on this Court's knowledge from other cases and from conferring with colleagues, investigators hired by plaintiff (as well as other licensors of rights to certain programming broadcast via satellite) visit a number of places during the night that a particular boxing match is broadcast. For example, plaintiff presented affidavits from investigator Craig Carita in five other cases concerning the De La Hoya/Hopkins match. See CV05-1037; CV05-1039; CV05-1040; CV05-1041; CV05-1043. Plaintiff nonetheless sought $350 for investigative fees in each of these

actions even though investigator Carita visited four of the establishments between 11:04 p.m. and 11:53 p.m.  See CV05-1037 (ct. doc. 6); CV05-1039 (ct. doc. 8); CV05-1041 (ct. doc. 6); and CV05-1043 (ct. doc. 8).  Similarly, plaintiff sought investigative fees of $350 in four actions involving the services of investigator James Picicci, who, according to his affidavit filed in support of motions for default judgment, entered four different establishments between 9:32 p.m. and 10:55 p.m.  See CV05-1044 (ct. doc. 7); CV05-1046 (ct. doc. 25); CV05-1298 (ct. doc. 6); CV05-1299 (ct. doc. 5).  This Court is not aware that plaintiff has presented any other affidavit from investigator Nugnes with respect to the boxing match.  Since the investigator arrived at the defendants' premises at 12:08 a.m. and left at 12:15 a.m., it is likely that the investigator did, in fact, visit other establishments before defendants'.  Nugnes Aff. at 1-2.  Investigator Nugnes returned to take photographs of the front of Rojas Deli & Grocery on September 23, 2004 at approximately 2:10 p.m.  Id. at 2.  Thus, I find the $350 in investigative fees sought by plaintiff to be excessive and recommend that this Court award only $100 in investigative costs.  This amount affords a generous hourly rate for investigative work in this case, since any other costs incurred by plaintiff for time spent by investigator Nugnes investigating other persons on the same evening is not compensable in this action.

I thus recommend that the Court award costs of $250 for the Court's filing fee, $270 for service of process fees on defendants and $100 for investigative fees, for a total of $620 in costs.

E.    Pre-Judgment and Post-Judgment Interest

Finally, plaintiff seeks pre-judgment and post-judgment interest.  See Compl. at ¶¶ 22, 28, 34; Pl. Mem. at 12.  Although there is no statute authorizing an award of pre-judgment interest for violations of sections 553 and 605 of Title 47, the district court nonetheless has the discretion to impose a pre-judgment interest award.  See Williams v. Trader Publ'g Co., 218 F.3d 481, 488 (5th Cir. 2000).  The Second Circuit has recognized that pre-judgment interest may be permitted in the absence of express statutory authorization "when the awards were fair, equitable and necessary to compensate the wronged party fully."  Wickham Contracting Co., Inc. v. Local Union No. 3, IBEW, 955 F.2d 831, 836 (2d Cir.), cert. denied, 506 U.S. 946 (1992); see also In Design v. K-Mart Apparel Corp., 13 F.3d 559, 569 (2d Cir.), abrogated on other grounds by Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994) (award of pre-judgment interest under Copyright Act, which is silent on the issue, is "equitable and discretionary," not mandatory).  Such a discretionary award is normally reserved for "exceptional" cases.  Am. Honda Motor Co., Inc. v. Two Wheel Corp., 918 F.2d 1060, 1064 (2d Cir. 1990).

Since the award of statutory damages and enhanced damages recommended here are not only sufficient to make the plaintiff whole, but are in part punitive, I recommend that pre-judgment interest not be awarded in the absence of any reason for such an award.  <u>See</u> <u>Wickham Contracting Co., Inc.</u>, 955 F.2d at 834 (prejudgment interest should not be awarded "if the statutory obligation on which interest is sought, is punitive in nature"); <u>see also</u> <u>Entm't by J & J Inc. v. Miraldo Rest., Inc.</u>, No. 01 CV 10832, 2003 U.S. Dist. LEXIS 11361, at *16 (S.D.N.Y. Apr. 22, 2003).  Of course, plaintiff shall be entitled to statutory post-judgment interest.  <u>See</u> 28 U.S.C. § 1961(a) (2000).

CONCLUSION

For the foregoing reasons, I respectfully recommend that this Court award plaintiff $1,000 in statutory damages, $10,000 in enhanced damages, $1,027.50 in attorneys' fees and $620 in costs, for a total judgment of $12,647.50 against defendants, jointly and severally.

A copy of this report and recommendation is being filed electronically on this date and sent via overnight delivery to defendants.  Any objections must be filed with the Clerk of the Court, with a copy to the Honorable David G. Trager, the undersigned and the other party, on or before October 30, 2006.

Failure to file timely objections may waive the right to appeal the District Court's Order.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; <u>Small v. Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989).

**SO ORDERED.**

Dated:     Brooklyn, New York
           October 12, 2006

                                    <u>   /s/                    </u>
                                    MARILYN D. GO
                                    UNITED STATES MAGISTRATE JUDGE